IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KEON JACKSON,

    *Plaintiff,*

v.                            **Case No.: 4:24cv331-MW/MJF**

ATHENA BITCOIN, INC.,

    *Defendant.*

_____/

## ORDER DENYING MOTION TO STRIKE

This Court has considered, without hearing, Defendant's motion to strike the opinions and testimony of Plaintiff's expert Anya Verkhovskaya. ECF No. 51. For the reasons that follow, the motion is due to be denied.

This case is a putative class action under the Telephone Consumer Protection Act of 1991 ("TCPA") and the Florida Telephone Solicitation Act. ECF No. 51 at 1–2. Plaintiff alleges that Defendant violated these laws by sending telemarketing text messages to customers who had previously opted out of those communications. *Id.* Plaintiff asks this Court to certify two classes. Relevant here is the "Internal Do Not Call Class" ("IDNC" Class), brought under 47 C.F.R. § 64.1200(d), which includes "[a]ll persons in the United States (1) to whom Athena delivered, or caused to be delivered, more than one text message promoting goods or services within any 12-month period, (2) more than 30 days after receiving a message consisting solely

of the word 'STOP', (3) between August 20, 2020, to August 20, 2024, (4) excluding business numbers." ECF No. 41 at 7. Because the putative class excludes business numbers, Plaintiff retained Ms. Verkhovskaya as an expert to "remove any business phone numbers in the IDNC Class." *Id.* at 23, 28.

The process, briefly, is this. Defendant produced "SMS logs" to Plaintiff. ECF No. 51 at 2 n.1. Plaintiff's counsel compiled a list of phone numbers from those logs and provided it to Ms. Verkhovskaya. *Id.*  Ms. Verkhovskaya then compared the list to a list of telephone numbers and area codes originating outside the United States and removed numbers outside the North American Numbering Plan.  *Id.* at 8. Finally, using coded commands, she conducted a "business status reverse append process" with data from third-party supplier PacificEast to separate out business phone numbers. *Id.* at 9–10.

Under Federal Rule of Evidence 702, as articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, district courts perform the critical "gatekeeping" function concerning the admissibility of expert evidence. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)). In the Eleventh Circuit, the proponent of an expert must show "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated

2

in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)); *see also McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). "Even 'shaky' expert testimony should be admitted, and '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' should be employed to attack the testimony." *Davis Elecs. Co. v. Springer Cap., LLC*, 558 F. Supp. 3d 443, 447–48 (W.D. Ky. 2021) (citing *Daubert*, 509 U.S. at 596). Defendant argues that Ms. Verkhovskaya's opinions and testimony should be stricken because she does not meet any of these three criteria. ECF No. 51 at 15–16. This Court disagrees.

First, Defendant briefly argues that Ms. Verkhovskaya is not qualified as an "expert in data analysis." ECF No. 51 at 16. In support, Defendant claims that she was originally a nurse and has not obtained education, training, or professional licenses or certificates in data analysis, nor has she "published or presented in the area of data analytics." *Id.*

Ms. Verkhovskaya's training as a nurse does not determine whether she is qualified to conduct her analysis in this case. What matters is her experience relevant to the task here, of which she has plenty. Ms. Verkhovskaya has "more than two

3

decades of experience serving as an expert witness or court-approved administrator in various class action matters, including hundreds of TCPA cases." ECF No. 52-12 ¶ 11. She has extensive experience analyzing telephone call records and serving as an expert witness in TCPA cases concerning "identification of wireless telephone numbers," "historical identification of telephone numbers as business or residential," and "cross-referencing data points between two or more data sets in order to aggregate or compare information." *Id.* ¶¶ 12–16. This Court is therefore satisfied that Ms. Verkhovskaya is qualified to separate business from residential phone numbers as she did here.

Though not binding upon this Court, it is persuasive that other district courts have reached the same conclusion. *See, e.g.*, *Johnson v. Comodo Grp., Inc.*, 2020 WL 525898, at *10 (D.N.J. Jan. 31, 2020) ("Ms. Verkhovskaya is clearly qualified to opine on TCPA issues. Although her college degree was in nursing, she has 19 years of experience serving as an expert witness or court-approved administrator in class action lawsuits, including TCPA suits."); *Shamblin v. Obama for Am.*, 2015 WL 1909765, at *3 (M.D. Fla. Apr. 27, 2015) ("The Court determines that . . . Verkhoskaya [is] amply qualified, and [her] relevant experience, education, and training render [her] competent to offer expert testimony in TCPA cases."); *Elliot v. Humana Inc.*, 2025 WL 897543, at *5 (W.D. Ky. Mar. 24, 2025) ("Verkhovskaya's

4

former career as a nurse and lack of degree in data analytics or a related field does not negate her experience or disqualify her as an expert.").

Second, Defendant argues that Ms. Verkhovskaya's methodology is unreliable because it does not satisfy the factors laid out in *Daubert* for evaluating scientific techniques. That is, it cannot be, and was not, tested here, it has not been subjected to peer review and publication, it has no known error rate, and it is not generally accepted by the relevant scientific community. *See* ECF No. 51 at 16–17.

But while these factors *may* be considered, they are not required in every circumstance. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–151 (1999). For example, in *Daubert*, they were offered as a suggestion for evaluating scientific theories or techniques. *Daubert*, 509 U.S. at 592–94; *see also Kumho*, 526 U.S. at 150–151. And when a court evaluates experts outside the scientific realm, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable" and should consider reliability "in light of the particular facts and circumstances of the particular case." *Kumho*, 526 U.S. at 152, 158.

Because Ms. Verkhovskaya is not offering scientific testimony but instead separating business and residential phone numbers, the *Daubert* factors are of limited utility. For example, this Court would not expect Plaintiff to be able to show

5

that Ms. Verkhovskaya's tactics are peer-reviewed or published, their error rate, or their general acceptance by a specific scientific community.

This Court is satisfied that, in light of the particular facts and circumstances of this case, Ms. Verkhovskaya's methodology is reliable. Ms. Verkhovskaya performed a very limited task—separating business from residential numbers—which enhances the reliability of her method. *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 388 (D. Mass. 2024) (Ms. Verkhovskaya narrowing proposed class to numbers more likely to be residential was a "limited purpose" which "further enhance[d] her method's reliability"). And, though not binding upon this Court, it is persuasive that other district courts have found this or similar methodologies reliable. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693, at *9–10 (M.D.N.C. Sept. 8, 2015) (Ms. Verkhovskaya reliably applied her methodology to LexisNexis data to remove business numbers); *Williams v. Pillpack LLC*, 2021 WL 535215, at *8 (W.D. Wash. Feb. 12, 2021) (Ms. Verkhovskaya's method of excluding business numbers using LexisNexis data "reliably excludes non-residential numbers from the proposed Class list."); *Johnson v. Comodo Grp., Inc.*, 2024 WL 2933195, at 7–8 (D.N.J. June 10, 2024) (collecting cases).

Defendant also claims the underlying PacificEast data used by Verkhovskaya is unreliable. ECF No. 51 at 18–20. In support, Defendant cites the declaration of PacificEast's Chief Operations Officer, Scott Rice, originally provided in a different

6

case. *Id.* There, apparently in response to a subpoena requesting "warranties and disclaimers as to the accuracy and reliability of PacificEast's products," Mr. Rice provides the "warranty template language" used in "all customer contracts for any product or service" which states in part that PacificEast "disclaims all warranties and guarantees pertaining to the licensed data and/or services, including . . . accuracy" and "PacificEast does not warrant that the licensed data and/or services will be uninterrupted or error-free, or that errors will be corrected." *Id.* at 19–20. Defendant claims this means that "PacificEast has expressly stated that its historical reverse append service cannot be reliably used to identify subscribers or users of certain phone numbers, thus its data can certainly not serve as the basis of expert testimony." *Id.* at 18–19; ECF No. 51-4 at 5.

Defendant significantly overstates the import of this boilerplate warranty language. Regardless, any potential flaws in the underlying data used by Ms. Verkhovskaya would go to the weight, not admissibility, of her testimony and opinions. *See Morgan v. Adventist Health Sys./Sunbelt, Inc.*, 2020 WL 13369054, at *2 (M.D. Fla. Jan. 15, 2020) (defendant's challenge to underlying data went to weight of Ms. Verkhovskaya's testimony, not its admissibility). Therefore, Defendant's concerns regarding PacificEast do not warrant exclusion of Ms. Verkhovskaya's testimony and opinions.

Defendant also cites *Carroll v. SGS Auto. Services, Inc.*, 2020 WL 7024477 at \*7 (M.D. La. Nov. 30, 2020), in which a district judge found Ms. Verkhovskaya's methodology was insufficiently reliable. ECF No. 51 at 20–21. But that case is not applicable here because (1) it arose under a different section of the TCPA from this case and (2) the challenge was to Ms. Verkhovskaya's matching of numbers to names of potential class members, not separating residential from business numbers. *Carroll*, 2020 WL 7024477, at \*4; *see Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024) (*Carroll* was not persuasive and did not warrant exclusion in § 227(c) case because it "ar[ose] under different sections of the TCPA which, necessarily, entailed different analyses by Verkhovskaya."). It is notable that in *Carroll*, Ms. Verkhovska also "filter[ed] the group of non-wireless home numbers to be sure that the number was not associated with a business at the time of the call"—the task challenged here— and the defendant did not, "for the most part, call[] [this process] into question." *See Carroll*, 2020 WL 7024477, at \*4.

Third, Defendant claims Ms. Verkhovskaya's testimony will not assist the trier of fact. Defendant states that the only task Ms. Verkhovskaya performed was "compiling a list of phone numbers" which "will not assist to resolve any issue of fact, much less any of the current issues surround class certification." ECF No. 51 at 21–22. Not so. Plaintiff's action requires him to show that Defendant sent text messages to residential telephone numbers. *See* 47 C.F.R. § 64.1200(d). Therefore,

Ms. Verkhovskaya's task of separating business from residential numbers in a list derived from Defendant's call logs is plainly helpful to the trier of fact at class certification.

Defendant also claims that "47 C.F.R. § 64.1200 presumes residential telephone subscribers to be individuals associated with those phone numbers registered to the national do-not-call list" and therefore, Ms. Verkhovskaya should have taken the additional step of filtering out phone numbers not registered to the national do-not-call-list. ECF No. 51 at 22. In support, Defendant cites *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024), where Ms. Verkhovskaya excluded business phone numbers and those registered to the do-not-call list. ECF No. 51 at 22–23. But Defendant is describing cases brought under 47 C.F.R. § 64.1200(c), like *Mantha*, which prohibit solicitation to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." This case is different because it is brought under § 64.1200(d), which does not mention the national do-not-call registry. Therefore, the fact that Ms. Verkhovskaya did not filter out numbers registered to the national do-not-call registry does not defeat the reliability of her methodology or its use for the trier of fact.

9

In sum, Ms. Verkhovskaya is qualified and her opinion here is both sufficiently reliable and useful to the trier of fact. Accordingly, Defendant's motion to strike ECF No. 51, is **DENIED**.

**SO ORDERED on May 1, 2025.**

**s/Mark E. Walker**
**Chief United States District Judge**